**E. & J. GALLO WINERY, Plaintiff,**

**v.**

**CONSORZIO DEL GALLO
NERO, Defendant.**

No. C–90–1498–DLJ.

United States District Court,
N.D. California.

Jan. 31, 1992.

G. Kip Edwards and Matthew D. Powers of Orrick, Herrington & Sutcliffe, San Francisco, Cal., for plaintiff.

Griffith B. Price, Jr., Mark S. Sommers of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., and John H. Bickel of Landels, Ripley & Diamond, San Francisco, Cal., for defendant.

## ORDER

JENSEN, District Judge.

On January 15, 1992, this Court heard plaintiff E. & J. Gallo's motion for attorneys' fees and defendant Consorzio del Gallo Nero's motions for discovery and a hearing in the event fees are awarded, and to amend the judgment. G. Kip Edwards of Orrick, Herrington & Sutcliffe appeared for plaintiff E. & J. Gallo Winery. Griffith B. Price, Jr., of Finnegan, Henderson, Farabow, Garrett & Dunner and John H. Bickel of Landels, Ripley & Diamond appeared for defendant Consorzio del Gallo Nero. Having considered the papers submitted, the arguments of counsel, the applicable law, and the entire record herein, the Court GRANTS plaintiff's motion for attorneys' fees, DENIES defendant's motion for discovery and a hearing, and DENIES defendant's motion to amend the judgment.

## I.  BACKGROUND

### A. *General background.*

This is an action for trademark infringement and dilution brought by plaintiff E. & J. Gallo Winery ("Gallo") against defendant Consorzio del Gallo Nero ("Gallo Nero").[1] Gallo produces a wide variety of wines featuring the "Gallo" trademark. Gallo Nero is an Italian trade association based in Florence, Italy, that promotes Chianti Classico wine produced by its individual members in the Chianti region of Italy. Prior to the formation of Gallo Nero in 1987, Chianti Classico producers were represented by the Consorzio Vino Chianti Classico ("CVCC"), which was formed in 1924. Gallo brought the present action, alleging trademark infringement and dilution through Gallo Nero's use of the term "Gallo" in connection with the U.S. promotion and distribution of its wines.

In an August 13, 1991 Order, this Court granted summary judgment in favor of Gallo on both the trademark infringement and dilution claims. *E. & J. Gallo Winery v. Consorzio Del Gallo Nero*, 782 F.Supp. 457, 471 (N.D.Cal.1991) ("Order"). The Court enjoined Gallo Nero from further use of the word "Gallo" in conjunction with the promotion and sale of its wines in the United States. On September 13, 1991, the Court issued a judgment of permanent injunction, again prohibiting the use of the word "Gallo" by defendant, with limited exceptions.

Gallo now moves for an award of attorneys' fees. Gallo claims that the facts surrounding defendant's previous use of the word "Gallo" indicate a wilful infringement of the trademark by defendant.

### B. *Facts giving rise to infringement.*

Prior to defendant's infringement activity in the United States, defendant had been a party to proceedings involving the Gallo trademark in foreign countries. In 1984, Gallo Nero's predecessor, CVCC, applied to register "Gallo Nero" as a mark in Canada. The Canadian trademark office rejected the application on the grounds that the mark would be confusing with Gallo's Canadian trademark registrations. In 1987, Gallo Nero opposed Gallo's application to register the "Ernest and Julio Gallo" mark in the United Kingdom. Gallo Nero opposed the application on the ground that the Gallo mark would be deceptive or confusing with the Gallo Nero mark.

In late 1986, CVCC published a full-page advertisement in the *Wine Spectator* using the words "Gallo Nero" to promote Chianti Classico wine. Plaintiff sent a cease-and-desist letter to CVCC in early 1987. Gallo advised that it is the largest wine producer

---

1. The procedural and factual background of this action is set forth more fully in the prior Order of this Court and is expressly incorporated here-

in. *E. & J. Gallo Winery v. Consorzio Del Gallo Nero*, 782 F.Supp. 457, 459–461 (N.D.Cal.1991).

in the United States and the owner of the "Gallo" trademark for wines in the United States. Gallo also alleged that defendant's advertisement constituted an infringement of the "Gallo" trademark. Gallo claimed that consumers and members of the trade were likely to be misled into mistakenly believing that the products advertised under the term "Gallo Nero" were affiliated with plaintiff.

In response to the cease-and-desist letter, CVCC claims to have investigated the nature of Gallo's product and market in the United States, and to have concluded that Gallo's fear of likelihood of confusion was without merit. Nevertheless CVCC stopped its U.S. marketing campaign based on the warning letter from Gallo. At the same time the founders of Gallo Nero also amended their existing bylaws as a precautionary measure to provide that Gallo Nero could also use the names "Black Rooster Consortium" and "Consorzio Chianti Classico" to market its wines if it were prevented from using "Gallo Nero."

In 1989, defendant Gallo Nero launched a second U.S. marketing campaign, again utilizing the words "Gallo Nero." A Gallo Nero marketing plan for years 1989–91 stated as its object the "increased trade and consumer recognition and awareness" of the Gallo Nero name in promoting its wine in the United States. Before launching its U.S. promotional campaign, Gallo Nero did not consult legal counsel to obtain an opinion on whether use of "Gallo Nero" in the U.S. would infringe Gallo's marks.

As part of defendant's promotional efforts in the United States, a series of seminars were planned for the wine trade in early 1990. The promotional materials for the seminars included use of the words "Gallo Nero." The current litigation commenced shortly after the start of this promotional campaign.

### C. *Background regarding amended judgment.*

On September 13, 1991, this Court issued two judgments with respect to the Court's August 13, 1991 Order granting summary judgment. The first judgment was a three page document entitled "JUDGMENT OF PERMANENT INJUNCTION." This judgment contained the specific terms of the injunction but said nothing about the allocation of costs. The second judgment was a one page document entitled "JUDGMENT." This document included the following statement: "Parties to bear their own costs."

On September 23, 1991, plaintiff's counsel sent a letter to the Court inquiring as to the significance of the statement that parties were to bear their own costs. Counsel speculated that the statement was intended to confirm the Court's denial of plaintiff's motion for expenses under Fed.R.Civ.Proc. 56(g) and 28 U.S.C. § 1927, which was raised in the summary judgment motion.

On October 11, 1991, this Court issued an Order correcting the single page judgment pursuant to Fed.R.Civ.Proc. 60(a). This Order stated, in pertinent part, that "[t]he statement in the September 13, 1991 Order that 'Parties to bear their own costs' was included in error and shall be omitted. Nothing in the judgment shall preclude the prevailing party from recovering costs in accordance with Federal Rule of Civil Procedure 54(d)."

## II. DISCUSSION

### A. *Motion for attorneys' fees.*

#### 1. Legal standard.

In a trademark infringement action, the Court may award attorneys' fees to the prevailing party only in "exceptional circumstances." 15 U.S.C. § 1117(a) (Lanham Act). A trademark case is "exceptional" for purposes of an award of attorneys' fees where the infringement is "malicious, fraudulent, deliberate or wilful." *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir.1984); *International Olympic Committee v. San Francisco Arts & Athletics*, 781 F.2d 733, 738 (9th Cir.1986).

In *International Olympic* the Ninth Circuit compared the wilful infringement standard of the Lanham Act with the similar standard in patent law. The Court stated:

[T]he rule defining willful infringement in patent cases is instructive. Cases construing willful infringement in patent areas apply the rule that one "who reasonably doubted that the patent was valid has not willfully infringed." 781 F.2d at 738. Thus Gallo Nero's infringement may not be termed wilful if Gallo Nero reasonably believed that its use of the word "Gallo" would not create a likelihood of confusion, rising to the level of infringement.

2. Application.

■ In this case, there is no dispute that Gallo Nero was at least cognizant of the potentially infringing nature of its use of the "Gallo" name in its promotional materials and on its products. The Court has already found that this was the case in its Order granting summary judgment. Order at 23:15–21. The real issue is whether defendant's decision to proceed with the use of the "Gallo" mark, in the face of such cognizance, constitutes wilful infringement.

There is no doubt but that Gallo Nero was on notice that there could be a likelihood of confusion caused by its use of the "Gallo" mark. Gallo Nero first learned of such likelihood from Canadian officials who cited that likelihood of confusion as a reason for denying Gallo Nero's trademark application. Gallo Nero was also informed of such likelihood by Gallo itself. In the cease-and-desist letter, Gallo strongly objected to Gallo Nero's use of the mark because of possible confusion. Gallo also set out the strength of its mark by explaining that Gallo is the largest producer of wines in the United States.

It is clear that Gallo Nero understood the significance of these warnings regarding likelihood of confusion. In response to Gallo's cease-and-desist letter, Gallo Nero cancelled its planned use of the Gallo name in a U.S. advertising campaign. At the same time, Gallo Nero amended its bylaws to authorize use of other names under which it could market its products. This action raises the clear inference that Gallo Nero was aware of a potential finding of likelihood of confusion, and subsequently, infringement.

■ Use of an infringing mark, in the face of warnings about potential infringement, is strong evidence of wilful infringement. *O'Brien International, Inc. v. Mitch*, 209 U.S.P.Q. 212, 221 (N.D.Cal. 1980). In *O'Brien*, plaintiff's counsel sent letters to the defendant explaining why the defendant's conduct constituted infringement and requesting that the defendant cease infringing conduct. The defendant ignored the initial letter but eventually responded by claiming that the defendant's conduct did not constitute infringement. *Id.* at 217. The district court held that defendant's "deliberate use of a competitor's trademark after clear notice of infringement makes this case 'exceptional.'" *Id.* at 221. Gallo Nero's notice of infringement was equally, if not more, clear. Gallo Nero had the benefit of warning from Gallo and from independent Canadian officials regarding likelihood of confusion.

Not only did Gallo Nero have notice of confusion, it attempted to assert such confusion to its own advantage in the United Kingdom. Gallo Nero argued to United Kingdom officials that they should deny Gallo's application to register the "Ernest and Julio Gallo" mark because the mark would be deceptive or confusing with the Gallo Nero mark. Gallo Nero's argument that it had a good faith belief that there was no likelihood of confusion falters in the face of Gallo Nero's previous assertions in the United Kingdom.

Gallo Nero contends that after it received Gallo's cease-and-desist letter, it took affirmative steps to distinguish its products from those of Gallo, in an attempt to alleviate risks of consumer confusion. Gallo Nero purportedly investigated the nature of Gallo's products and concluded that the respective wine products of the two companies were sufficiently distinct to prevent confusion. Gallo Nero's "in house" investigation and attempts to distinguish its products were, at best, insufficient to support a reasonable belief that Gallo Nero's conduct would not constitute infringement.

■ In light of the notice of likelihood of confusion from Gallo and Canadian officials, Gallo Nero was reasonably required to take more significant affirmative steps to ensure that its conduct would not constitute infringement. Gallo Nero could have retained legal counsel to obtain an opinion as to the likelihood of infringement. The failure to consult trademark counsel prior to engaging in infringing conduct, where such consultation would be reasonable, supports a finding of wilful infringement. *See Sands, Taylor & Wood v. Quaker Oats Co.,* 18 U.S.P.Q.2d 1457, 1471–73, 1476 (N.D.Ill.1990); *Sun Products Group, Inc. v. B & E Sales Co.,* 700 F.Supp. 366, 385 (E.D.Mich.1988). In *Sands,* for example, the court noted that the defendant never sought a "formal legal opinion regarding the possibility of trademark infringement prior to" producing the infringing advertising materials. Like Gallo Nero, the defendant in *Sands* did not seriously consider the need for legal advice until faced with the prospect of a lawsuit. *Sands,* at 1473. "Such lack of concern clearly negates a finding of good faith." *Id.*

Given ample notice that its actions could constitute infringement, Gallo Nero embarked on its infringing conduct after an unsuccessful attempt to distinguish its products and an "in house" investigation concluding that Gallo Nero's conduct would not constitute infringement. Gallo Nero claims that its actions demonstrate a good faith belief of noninfringement. This assertion of "good faith" conduct in the U.S. market is of little weight in light of Gallo Nero's near contemporaneous assertion in the United Kingdom that the proposed Gallo mark would be confused with Gallo Nero's mark. Gallo Nero's marketing campaign of 1989 in light of its undisputed knowledge of the risk of infringement, its past conduct demonstrating a belief that there is a likelihood of confusion, and its failure to obtain a legal opinion on the infringement issue, compel the conclusion that the infringement here was well within the standard for culpable infringement stated by the Ninth Circuit in *Sealy* and *International Olympic.* Accordingly the Court finds that Gallo Nero's conduct constituted wilful infringement, making this case "exceptional" within the meaning of the Lanham Act. Gallo's motion for attorneys' fees will be granted.

### 3. Defendant's motion for discovery and hearing.

■ In the event that the Court granted Gallo's motion, Gallo Nero moved for discovery and a hearing on the issue of the amount of the award for attorneys' fees. The Court finds that such discovery and a hearing would be unnecessary and wasteful. Continued proceedings regarding this motion would not assist the decision making responsibilities of the Court and would only result in further fees to be incurred by defendant. Thus Gallo Nero's motion will be denied.

### B. *Motion to amend judgment.*

■ The Court corrected the judgment in this case to delete the statement that parties were to bear their own costs. Defendant now moves pursuant to Fed.R.Civ. Proc. ("Rule") 59(e) to amend the judgment to restore the deleted statement.

Pursuant to Rule 60(a), the Court, on its own initiative, may correct errors in a judgment arising from oversight or omission. Defendant argues that where an intention in a judgment is subsequently found to be in error, the error does not arise from oversight and Rule 60(a) cannot be used to amend the judgment.

Defendant's legal argument may very well be correct, but the simple fact is that the Court amended the judgment in this case based solely on oversight. It was never the intent of the Court that the judgment should include a statement regarding the allocation of costs. The oversight was brought to the attention of the Court by plaintiff's related inquiry about the meaning of the statement regarding costs. The Court promptly corrected the judgment to reflect the intent of the Court. Such a correction is exactly what Rule 60(b) is intended to effectuate. Accordingly, defendant's motion to amend the judgment will be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.  Plaintiff Gallo's motion for attorneys' fees pursuant to 15 U.S.C. § 1117(a) is GRANTED.

2.  Defendant Gallo Nero's motion for discovery and a hearing on the amount of attorneys' fees to be awarded is DENIED.

3.  Defendant Gallo Nero's motion to amend the judgment is DENIED.

4.  Within twenty-one (21) days from the filing of this Order, Gallo Nero shall file objections to the proposed award of fees set forth in the Declaration Of G. Kip Edwards In Support Of Gallo's Motion For Attorneys' Fees, filed on November 6, 1991.  Gallo may file a reply within seven (7) days thereafter.  The matter will then stand submitted to the Court for consideration without further hearing.

IT IS SO ORDERED.